[S. F. No. 7899. Department One.—March 12, 1918.]

JOHN S. CHAMBERS, State Controller, Appellant, v. JAMES GALLAGHER, as Executor, etc., Respondent.

INHERITANCE TAX—PROCEEDING TO RECOVER FROM EXECUTOR.—In a proceeding by the district attorney against an executor to recover taxes, under the inheritance tax law, as it existed in 1902, such executor may demur to the application in the same manner and for the same causes as in ordinary civil actions.

ID.—STATUTE OF LIMITATIONS.—The statute of limitations was applicable to the liability of the executor for inheritance taxes, under the inheritance tax law as it existed in 1902.

ID.—WHEN STATUTE BEGAN TO RUN.—The statute of limitations began to run in favor of the executor, upon his liability for such taxes, upon the expiration of thirty days from the final settlement of the estate, at the very latest.

ID.—STATUTE OF LIMITATIONS—ACT OF 1913 DOES NOT REVIVE CAUSES OF ACTION PREVIOUSLY BARRED.—Section 4 of the Inheritance Tax Act of 1913, in so far as it attempts to remove the bar of the statute of limitations from causes of action which were barred at the time of its enactment, is inoperative, it being an attempt to divest rights already vested.

APPEAL from a judgment of the Superior Court of Fresno County. George E. Church, Judge.

The facts are stated in the opinion of the court.

Robert A. Waring, and J. Paul Miller, for Appellant.

James Gallagher, *in pro. per.*, for Respondent.

SHAW, J.—The plaintiff appeals from a judgment in favor of the defendant.

The petition of the plaintiff shows the following facts: Richard Hedinger died on January 27, 1902. His will was duly probated, the executor appointed, the estate administered, and on July 29, 1902, a decree was duly made, distributing to Augustus Hedinger, the residuary legatee and devisee, the property remaining in the estate after the payment of one thousand five hundred dollars in charitable bequests. On September 25, 1914, more than twelve years after said

decree of final distribution, the state controller filed a petition in the court which made said decree, alleging that no inheritance tax had been paid on the property so distributed to Augustus Hedinger, and praying that the court appoint an appraiser to appraise said property and ascertain the amount of such tax; that a citation be issued to the executor to appear before such appraiser and be examined under oath, and show cause why he should not be held chargeable for the payment of said tax, and for judgment that the executor be declared liable for the payment, and be directed to pay such tax to the treasurer of the county. To this petition the executor filed a demurrer, based upon the ground that the proceeding was barred by the statute prescribing three years as the limitation for actions upon a liability created by statute. (Code Civ. Proc., sec. 338, subd. 1.) The demurrer was sustained and thereupon the judgment was given for the defendant.

The Inheritance Tax Act in force at the death of Hedinger in 1902 was the act of 1893 [Stats. 1893, p. 193]. Some amendments thereto were made prior to 1902, but they do not affect the questions arising in this case. The act provided for an appraisement of the property subject to such tax, and that the court in which the administration of the estate was pending should therefrom compute the tax to be paid. Section 14 provided that when it appeared to the court that such tax had not been paid within the time allowed, it should cite the persons owning the property to show cause why the tax should not be paid, and that the hearing, the judgment of the court, and its enforcement, should proceed in the manner prescribed in the chapter of the Code of Civil Procedure embracing sections 1704 to 1724, inclusive. Section 15, as amended in 1895 [Stats. 1895, p. 33], provided that if the tax became due and was unpaid, the district attorney of the county, on notice of that fact from the county treasurer, should prosecute the proceeding authorized by section 14, as aforesaid, for the enforcement and collection of such tax. The sections of the code referred to provide for a citation to the parties proceeded against, its personal service and return, the trial of the issues found in the proceedings, for judgment thereon and for its enforcement by execution, and that the rules of practice prescribed in ordinary

CLXXVII Cal.—45

civil actions should be followed except as otherwise provided. It follows that the parties proceeded against, following the practice in civil actions, may demur to the petition filed against them, as provided in the code (sec. 430, Code Civ. Proc.), and that the question of the statute of limitations was properly presented by the demurrer.

The appellant claims, first, that the provisions of the Inheritance Tax Act in force at the death of the testator operated to continue the liability of the executor indefinitely and beyond the statutory period of limitation, and, second, that even if the statute would otherwise apply, that a provision in section 4 of the Revised Inheritance Tax Act of 1913 (Stats. 1913, p. 1068), removes the bar of the statute of limitations with respect to taxes which were barred at the time of this enactment.

Section 4 of the act, as it existed in 1902, provided that the tax imposed thereby should be due and payable at the death of the decedent; that if not paid within eighteen months thereafter, interest should be charged thereon at the rate of ten per cent per annum from the time of such death, and that thereupon such executor should give a bond for the payment of such tax and interest. Section 6 provided that the executor should deduct the tax from any money to be paid on distribution, or if the property distributed was not money, should collect the tax thereon from the person to whom it was distributed, before such distribution, and that "he shall not deliver, or be compelled to deliver, any specific legacy or property subject to tax to any person until he shall have collected the tax thereon." Section 1 provided that "all administrators, executors and trustees, shall be liable for any and all such taxes until the same shall have been paid, as hereinafter directed." Section 8 provided that moneys retained by an executor for any such tax "shall be paid by him, within thirty days thereafter, to the treasurer of the county in which the probate proceedings are pending"; that the treasurer should transmit the money to the state controller, who should receipt therefor under seal, and that "an executor, administrator, or trustee shall not be entitled to credit in his accounts, nor be discharged from liability for such tax, nor shall said estate be distributed unless he shall produce a receipt so sealed and countersigned by the controller, or a copy thereof, certified by him." Prior to 1913 the inheritance tax was not

declared to be a lien upon property.    The amendment to section 4, enacted in that year and here relied on, is as follows:
"The provisions of the Code of Civil Procedure relative to
the limitation of time of enforcing a civil remedy shall not
apply to any proceeding or action taken to levy, appraise,
assess, determine, or enforce the collection of any tax or penalty prescribed by this article, and this section shall be construed as having been in effect as of date of the original
enactment of the inheritance tax law."

(1) We do not think the provisions of the act as it stood
prior to 1913 show an intent to prevent the running of the
statute of limitations in favor of the executor after the distribution of the estate.    The scheme of the act was that the
executor should see that the taxes were paid before he had
made final settlement of his estate, or within thirty days
thereafter.    His obligation became matured at the expiration
of such thirty days at all events.    The intention was that
the court having charge of the administration should not
order the settlement of the estate or the discharge of the executor until such tax had been paid.    Nothing is said in the
law regarding the operation of the statute of limitations or
purporting to prevent it from running against such demand,
or to differentiate it from any other matured obligation to
the state.    The act of 1913 expressly declaring such intent is
a strong indication that the legislature itself did not suppose
that it had previously done so.    Doubtless the liability of the
executor, under the terms of the act, continued after the settlement of the estate, if the tax was not previously paid, and
could be enforced in a proper proceeding by the district attorney for that purpose under the provisions of the act.    But
there is nothing in the language of the act which declares
that the statute does not run against such liability, as in other
cases.    It is the duty of every person to pay his debts, but
the existence of that duty does not prevent the running of
the statute of limitations in his favor, upon his failure to pay
them when due.    The duty to pay this tax is no greater than
the duty of every citizen to pay his ordinary taxes on property.    It is, perhaps, even less burdensome, since the inheritance tax at the time in question was not a lien upon property, as in the case of ordinary taxes.    (Pol. Code, sec. 3716.)
In cases where the law also allowed a personal action to be
maintained for the recovery of such taxes, we have uniformly

held that the statute of limitations applies to such actions; that such tax is a liability created by statute, which, under section 338, subdivision 1, aforesaid, is barred after the expiration of three years from the time when the right of action accrued. (*San Diego* v. *Higgins,* 115 Cal. 170, [46 Pac. 923]; *Los Angeles* v. *Ballerino,* 99 Cal. 595, [32 Pac. 581, 34 Pac. 329]; *San Francisco* v. *Luning,* 73 Cal. 610, [15 Pac. 311]; *Lewis* v. *Rothchild,* 92 Cal. 625, [28 Pac. 805]; *Dranga* v. *Rowe,* 127 Cal. 506, [59 Pac. 944]; *Clark* v. *San Diego,* 144 Cal. 361, [77 Pac. 973].) The same principle applies to a demand for inheritance tax under the act of 1893, and its amendments prior to 1902. This proceeding to enforce the personal liability of the executor for the payment of the tax in question was therefore barred by the statute at the time the amendment of 1913 was enacted.

(2) We are also satisfied that the appellant is wrong in his contention that the act of 1913, purporting to take away the defense of the statute of limitations with respect to proceedings to enforce payment of inheritance taxes which were barred at that time, is constitutional, and operates to deprive the executor in this case of that defense. Mr. Wood, in his treatise on the statute of limitations, states the law on this subject as follows: "Statutes of limitation relate only to the remedy, and may be altered or repealed before the statutory bar has become complete, but not after, so as to defeat the effect of the statute in extinguishing the rights of action. . . . It has been held in a case decided by a majority of the supreme court of the United States (*Campbell* v. *Holt,* 115 U. S. 620, [29 L. Ed. 483, 6 Sup. Ct. Rep. 209]), that, in actions upon debt, contract, or any class of actions in which a party does not become invested with the title to property by the statute of limitations, the legislature may by a repeal of the statute of limitations, even after the right of action thereon is barred, restore to the plaintiff his remedy thereon, and divest the other party of the statutory bar. The doctrine of this case is undoubtedly technically correct, and was suggested in the first edition of this work. It is, however, opposed to the great weight of authority in this country, and to the policy of these statutes. There can be no question that the legislatures of the several states by the passage of the statute of limitations intended a permanent divestment of a right of action in all matters to which the statute relates,

when it had run against them, and they had thereby become barred. And while it may be, as already suggested, that the reasoning of the court is correct, yet the wisdom of the doctrine announced is questionable.'' (Wood on Limitations, 4th ed., sec. 11, p. 46.) This proposition is supported by the almost universal course of decision in the United States. The courts of Arkansas, Colorado, Florida, Iowa, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, New Hampshire, New Jersey, Tennessee, Utah, Virginia, Washington, and Wisconsin all adhere to the doctrine. (*Couch* v. *McKee,* 6 Ark. 492; *Willoughby* v. *George,* 5 Colo. 80; *Bradford* v. *Shine's Admr.,* 13 Fla. 393, [7 Am. Rep. 239]; *Board of Education* v. *Blodgett,* 155 Ill. 441, 445, [46 Am. St. Rep. 348, 31 L. R. A. 70, 40 N. E. 1025]; *Stipp* v. *Brown,* 2 Ind. 647; *Bowman* v. *Cockrill,* 6 Kan. 205; *Lawrence* v. *Louisville,* 96 Ky. 600, [49 Am. St. Rep. 309, 27 L. R. A. 560, 29 S. W. 450]; *Norris* v. *Slaughter,* 3 Greene (Iowa), 116; *Bigelow* v. *Bemis,* 84 Mass. 496; *Atkinson* v. *Dunlap,* 50 Me. 111; *Whittier* v. *Village of Farmington,* 115 Minn. 187, [131 N. W. 1079]; *Davis* v. *Minor,* 1 How. (Miss.) 188, [28 Am. Dec. 325]; *Rockport* v. *Walden,* 54 N. H. 173, [20 Am. Rep. 131]; *Ryder* v. *Wilson Exrs.,* 41 N. J. L. 10; *Girdner* v. *Stephens,* 48 Tenn. 280, [2 Am. Rep. 700]; *Ireland* v. *Mackintosh,* 22 Utah, 296, [61 Pac. 901]; *Kesterson* v. *Hill,* 101 Va. 739; *City of Seattle* v. *De Wolfe,* 17 Wash. 349, [49 Pac. 553]; *Eingartner* v. *Illinois Steel Co.,* 103 Wis. 373, [74 Am. St. Rep. 871, 79 N. W. 433].)

The same doctrine has been announced in this state and applied to cases where rights of specific property were involved. (*Peiser* v. *Griffin,* 125 Cal. 14, [57 Pac. 690].) It has been stated in other cases where the precise question was not involved. (*Allen* v. *Allen,* 95 Cal. 197, [16 L. R. A. 646, 30 Pac. 213]; *Swamp Land Dist.* v. *Glide,* 112 Cal. 90, [44 Pac. 451] *Weldon* v. *Rogers,* 151 Cal. 432, [90 Pac. 1062].) The question as applied to actions to enforce personal obligations has not heretofore arisen in this state, but upon the authority of the cases we have cited, and the practically universal rule on the subject, we feel no hesitancy in adhering to the doctrine as stated by Mr. Wood. The act of 1913 is therefore inoperative to revive the right of action of the controller which had become barred long before that time. It

follows that the demurrer to the petition was properly sustained.

The judgment is affirmed.

Sloss, J., and Richards, J., *pro tem.*, concurred.

Hearing in Bank denied.